[No. E030006. Fourth Dist., Div. Two. July 30, 2003.]

DAVCON, INC. et al., Plaintiffs and Appellants, v.
ROBERTS & MORGAN et al., Defendants and Respondents.

**COUNSEL**

Schaffer, Lax, McNaughton & Chen, John H. Horwitz; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Defendants and Appellants.

Law Offices of Bryan F. Foster and Bryan F. Foster for Defendants and Respondents.

## Opinion

**HOLLENHORST J.**—This legal malpractice action was tried to a jury in 1998. The jury found that defendants were negligent and that the negligence caused damages to Davcon in the sum of $246,704.51. The trial court, Judge Trask, granted an oral motion for judgment notwithstanding the verdict and Davcon appealed.

In *Davcon v. Roberts & Morgan* (E023781; nonpub. opn. filed November 17, 2000) we found the trial court's grant of the oral motion for judgment notwithstanding the verdict was a nullity.[1] We therefore reversed the judgment notwithstanding the verdict and remanded with directions to enter a new judgment based on the jury's verdict. In a footnote we said: "We merely order the trial court to enter judgment based on the jury's verdict. We express no opinion on the question of whether there are any procedural avenues available to attack such a judgment in the trial court."

The remittitur issued on January 19, 2001. On January 24, 2001, defendants filed a new motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Hearing on the motions was set for February 27, 2001.

The day before the hearing, plaintiffs filed an affidavit to disqualify the trial judge, Judge Trask, pursuant to Code of Civil Procedure section 170.6.[2] On the same day, Judge Trask issued a minute order: "Court having read and considered Plaintiff's [affidavit] re: Disqualification pursuant to CCP 170.6 finds good cause and on courts' [*sic*] own motion orders case reassigned to the next court on assignment rotation. Clerk to give telephonic notice to all parties."

On March 7, 2001, the case came on for hearing before Judge Kaiser. He ruled the peremptory challenge was improper: "One is the 170.6 was not well taken, so I'm going to send the matter back to Department 4. [¶] If you look at 170.6, when a matter is returned from the Court of Appeals [*sic*], the 170.6 is only proper if it's sent back for a new trial. Otherwise, if there is any post-judgment motion, somebody would have to read the entire transcript. [¶] Also, there has been no judgment entered yet. It's been sent back from the Court of Appeal to enter judgment. Therefore, the judgment NOV is not

---

[1] By order filed November 15, 2001, we granted the parties' joint request to take judicial notice of the record in case No. E023781.

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

timely."[3] Judge Kaiser vacated the hearing on the motions for judgment notwithstanding the verdict and new trial and returned the case to Judge Trask.

Judge Trask accepted Judge Kaiser's ruling and struck the 170.6 challenge. Judge Trask then ordered judgment to be entered for plaintiff Davcon in accordance with the remittitur. Hearing on the motions for judgment notwithstanding the verdict and new trial was continued until March 29, 2001.

On March 29, 2001, Judge Trask again granted the motion for judgment notwithstanding the verdict. Judgment was entered in favor of defendants on April 25, 2001. The judgment also states: "[D]efendant's [sic] motion for new trial be, and hereby is, granted and that the verdict rendered on July 13, 1998, and the judgment entered on that verdict be set aside and vacated and that a new trial is ordered on all issues." A specification of reasons for a new trial, prepared by defendants' counsel was also filed on April 25, 2001. It was not signed by the trial court. This appeal followed.

## THE TRIAL COURT'S ALLEGED FAILURE TO RULE ON THE MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND NEW TRIAL WITHIN 60 DAYS

Davcon first argues that the trial court lacked the power to rule on the judgment notwithstanding the verdict and new trial motions because the hearing was more than 60 days from the date they were filed. It points out that section 660 requires the trial court to rule on such motions within 60 days. Since the motions were filed on January 24, 2001, and granted more than 60 days later, on March 29, 2001, Davcon argues that the trial court's action was beyond its jurisdiction and void.[4]

In response, defendants argue that the time for the trial court to act on the motions was tolled during the time the section 170.6 peremptory challenge was pending. Defendants contend that the affidavit of disqualification was lodged on February 13, 2001, and that it was pending until March 7, 2001, some 22 days later. Defendants argue that 22 days should be added to the

---

[3] With regards to Judge Kaiser's comment that there had been no judgment entered, we note that the motion for judgment notwithstanding the verdict may be made before judgment is entered. (§ 659; *Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1239 [30 Cal.Rptr.2d 815].)

[4] Technically, "[a] motion for a new trial is not determined within the meaning of this section until an order ruling on the motion (1) is entered in the permanent minutes of the court or (2) is signed by the judge and filed with the clerk." (§ 660; *Catania v. Halcyon Steamship Co.* (1975) 44 Cal.App.3d 348, 351–352 [118 Cal.Rptr. 513].) In the absence of any other evidence we assume that this provision was complied with on the date of the hearing, March 29, 2001.

time to decide the judgment notwithstanding the verdict and new trial motions.[5] Defendants therefore conclude that the March 29, 2001, decision on those motions was timely.

The record does not support defendants' argument. It shows that the disqualification was filed on February 26, 2001, and that it was accepted by Judge Trask on that day. The order states: "Court having read and considered Plaintiff's [affidavit] re: Disqualification pursuant to CCP 170.6 finds good cause and on courts' own motion orders case reassigned to the next court on assignment rotation. Clerk to give telephonic notice to all parties."

Section 170.6, subdivision (2) provides, in relevant part: "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter. Notwithstanding paragraph (3) of this section, the party who filed the appeal that resulted in the reversal of a final judgment of a trial court may make a motion under this section regardless of whether that party or side has previously done so. The motion shall be made within 60 days after the party or the party's attorney has been notified of the assignment."

Section 170.6 is a peremptory procedure. "The right to exercise a peremptory challenge under Code of Civil Procedure section 170.6 is a substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary. [Citation.] As a remedial statute, section 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it. [Citation.] By enacting section 170.6, the Legislature *guaranteed* litigants the right to automatically disqualify a judge based solely on a good faith belief in prejudice; proof of actual prejudice is not required. [Citation.]" (*Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 61–62 [116 Cal.Rptr.2d 616].) The court therefore held: "If a peremptory challenge motion in proper form is timely filed under section 170.6, the court must accept it without further inquiry. [Citation.]" (*Stephens,* at p. 59.)

The court's holding echoes the statutory language, which provides: "If the motion is duly presented and the affidavit or declaration under penalty of perjury is duly filed or such oral statement under oath is duly made,

---

[5] Although the declaration supporting the disqualification is dated February 12, 2001, and the face of the document has the date of February 13, 2001, stamped on it, the face of the document also shows that it was not filed until February 26, 2001. Thus, only nine days passed between the filing of the motion and the decision by Judge Kaiser. If the nine days was added to the 60-day period for deciding motions, the time period for acting on the motions had still not expired by the time Judge Trask granted the motions on March 29, 2001.

*thereupon and without any further act or proof,* the judge supervising the master calendar, if any, shall assign some other judge ... to try the cause or hear the matter." (§ 170.6, subd. (3), italics added.)

The cases support the conclusion that the disqualification request "takes effect instantaneously and irrevocably." (*Louisiana-Pacific Corp. v. Philo Lumber Co.* (1985) 163 Cal.App.3d 1212, 1219 [210 Cal.Rptr. 368]. See also *Barrett v. Superior Court* (1999) 77 Cal.App.4th 1, 4–5 [91 Cal.Rptr.2d 116], and cases cited.) There was therefore no period of suspension to toll the period to act on a judgment notwithstanding the verdict or new trial motion.

Defendants rely on *Collins v. Nelson* (1940) 41 Cal.App.2d 107 [106 P.2d 39]. In that case, a motion to disqualify the trial judge was filed under former Civil Code section 170. The motion for a new trial was filed on December 12, 1936, and was set for hearing on January 13, 1937. (*Collins,* at p. 112.) On the day set for hearing, a disqualification motion was filed. The motion was pending from that day until it was disposed of on September 1, 1938. The court held that the power of the trial court was suspended during that time, and the time had to be excluded when counting the 60-day period for ruling on the new trial motion. (*Ibid.*) "To hold otherwise would lead to absurdity, because a party resisting a motion for new trial could defeat it merely by resorting to the proceedings named in [former] section 170 of the Code of Civil Procedure, in the determination of which motion to disqualify the trial judge more than 60 days might reasonably be expected to elapse, especially if an appeal were taken, as in the instant case." (*Collins,* at pp. 112–113.)

Former section 170 was repealed in 1984. It allowed counsel to file a statement of disqualification. Upon such filing, the challenged judge had 10 days to respond, and another judge would then decide whether the disqualification was proper. As *Collins* held, the time spent in deciding whether the judge was disqualified had to be excluded from the time to decide a new trial motion in order to prevent abuse. Although there was a peremptory challenge available under former section 170.5, it was not used in *Collins.* (See generally 2 Witkin, Cal. Procedure (4th ed. 1996), Courts, §§ 135–137, pp. 178–184.)

 As noted above, under the current peremptory challenge procedure, the challenge must be duly presented with the necessary affidavit. If so, it is effective "without any further act or proof." (§ 170.6, subd. (3).) Judge Trask, in her minute order of February 26, 2001, found good cause and ordered the

case reassigned.[6] The challenge was therefore effective to remove Judge Trask from the case. "Where a disqualification motion is timely filed and in proper form, the trial court is bound to accept it without further inquiry. [Citations.]" (*Barrett v. Superior Court, supra,* 77 Cal.App.4th 1, 4–5.)

There was, therefore, no further period in which disqualification was pending and in which the time for deciding the motion for new trial was tolled.

A question arises as to Judge Kaiser's determination, on March 7, 2001, that the section 170.6 motion was "not well taken," and his subsequent order returning the case to Judge Trask.

In the recent case of *Stephens v. Superior Court, supra,* 96 Cal.App.4th 54, the court first reiterated the general rule that "[i]f a peremptory challenge motion in proper form is timely filed under section 170.6, the court must accept it without further inquiry. [Citation.]" (*Stephens,* at p. 59.) The court then held that the peremptory challenge was barred by the continuation of proceedings rule. The court also considered the order of a second judge, which struck the peremptory challenge. Specifically, the court considered whether section 170.4, relating to the power of disqualified judges to act, applied to peremptory challenges: "Because section 170.4 is part of a group of statutes concerning disqualification of judges *for cause,* whether it applies to peremptory challenges under section 170.6 is questionable. Assuming, without deciding, that it does, we conclude it does not preclude [the disqualified judge] from acting further in this case." (*Stephens,* at p. 64.) The court then ruled that the second judge had the inherent power to correct the erroneous granting of a peremptory challenge. (*Id.* at pp. 64–65.) But in *Micro/Vest Corp v. Superior Court* (1984) 150 Cal.App.3d 1085, 1089–1090 [198 Cal.Rptr. 404], the court held that the second judge exceeded his jurisdiction in reconsidering the first judge's ruling on a section 170.6 challenge. ■ These specific cases are in accord with the general principle that one trial court judge may not reconsider and overrule a ruling by another trial court judge, unless the first judge is unavailable. (*International Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 784, 786, fn. 2 [72 Cal.Rptr.2d 849]; *Curtin v. Koskey* (1991) 231 Cal.App.3d 873, 876–877 [282 Cal.Rptr. 706].)

Although Judge Kaiser's order striking the peremptory challenge was questionable and subject to attack, the parties have not attacked it here, and

---

[6] Defendant did not challenge this decision by pursuing the available remedy, which was to file a petition for a writ of mandate within 10 days of the notice to the parties of the court's disqualification decision. (§ 170.3, subd. (d); *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

we find it unnecessary to discuss its validity.[7] The significant fact is that the peremptory challenge was effective "without any further act or proof" when it was accepted by Judge Trask. (§ 170.6, subd. (3).) Thus, under the current peremptory challenge procedure, there is no delay while the challenged judge responds and the matter is heard by another judge. "[B]ecause the challenge takes effect instantaneously and irrevocably, then later events (such as dismissal of the party who asserted the challenge) do not cause a recission of the challenge." (*Louisiana-Pacific Corp. v. Philo Lumber Co., supra,* 163 Cal.App.3d 1212, 1219.)

■ Since the peremptory challenge was effective immediately, it was not pending between the date of Judge Trask's order accepting the peremptory challenge and the date of Judge Kaiser's order striking the peremptory challenge. Accordingly, the time period did not act to extend the time for deciding defendants' motions under section 660.

We therefore reject defendants' argument that the time for deciding the new trial motion was extended by 22 days. Since there was no tolling of the 60-day period to determine the motion for judgment notwithstanding the verdict, the trial court lost jurisdiction to decide the motion after 60 days. "If such motion is not determined within said period of 60 days, …, the effect shall be a denial of the motion without further order of the court." (§ 660; *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 64 [61 Cal.Rptr.2d 166, 931 P.2d 344]; *Dodge v. Superior Court* (2000) 77 Cal.App.4th 513, 517–518 [91 Cal.Rptr.2d 758].) Since the trial court's decision was made after it lost jurisdiction, it was a nullity. (*Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, 1049 [102 Cal.Rptr.2d 673]; see generally 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in the Trial Court, §§ 75–79, pp. 578–582.)[8]

## RESPONSE TO DISSENT

The dissent argues that (1) plaintiffs should be estopped from denying that Judge Trask's order denying defendants' motion for a new trial was untimely; and (2) plaintiffs' peremptory challenge was never effective.

The dissent misses the point: our holding is that there was no tolling because the peremptory challenge was effective on the day it was filed *because it was accepted by Judge Trask on that day.*

---

[7] Plaintiffs have also not contended that Judge Trask's subsequent order granting judgment notwithstanding the verdict was invalid because Judge Kaiser's order was invalid.

[8] Since we find the trial court lacked jurisdiction, we do not need to consider Davcon's other challenges to the granting of the judgment notwithstanding the verdict and new trial motions.

In ruling on a peremptory challenge under section 170.6, the trial judge should have first examined it, determined it was in proper form and determined whether it was timely filed. Timely filing would include a determination as to whether the peremptory challenge was improper because it did not meet the requirements of the statute, including the requirement under section 170.6, subdivision (2) that the trial judge was assigned to conduct a new trial of the case.

Acceptance of the peremptory challenge by the trial court is crucial because it signals that the trial judge has no further jurisdiction to act in the matter. If a judge acts without jurisdiction, the judge may be subject to discipline by the Commission on Judicial Performance. A disqualified judge may violate section 170.4 by acting on matters not specifically defined in that section. If the disqualified judge does so, he or she may be subject to discipline. Here, the trial judge accepted the challenge but subsequently ruled on the motions.

The dissent argues that the trial judge should not have accepted the peremptory challenge for various reasons, but the fact remains that the trial judge did accept it, and we are not deciding whether she should have done so or not. By focusing on and redeciding the merits of the disqualification motion, including issues not raised by the parties, the dissent ignores section 170.3, subdivision (d). That subdivision states: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." A ruling under section 170.6 "is reviewable only by writ of mandate under … section 170.3, subdivision (d)." (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110 [61 Cal.Rptr.2d 134, 931 P.2d 312]; *People v. Webb* (1993) 6 Cal.4th 494, 522–523 [24 Cal.Rptr.2d 779, 862 P.2d 779]; *People v. Hull* (1991) 1 Cal.4th 266 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

The dissent relies on a case in which a writ of mandate was properly brought to challenge the merits of the decision on the disqualification motion. (*Stephens v. Superior Court, supra*, 96 Cal.App.4th 54.) Determination of the merits of the motion in that case was proper, but the present case does not involve a petition for writ of mandate to determine whether the trial judge should have rejected the peremptory challenge.

Even though the dissent focuses on the merits of the peremptory challenge, it ignores the basic principles for deciding such petitions, as set forth in *Stephens* itself: "The right to exercise a peremptory challenge under Code of Civil Procedure section 170.6 is a substantial right and an important part of

California's system of due process that promotes fair and impartial trials and confidence in the judiciary. [Citation.] As a remedial statute, section 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it. [Citation.] By enacting section 170.6, the Legislature *guaranteed* litigants the right to automatically disqualify a judge based solely on a good faith belief in prejudice; proof of actual prejudice is not required. [Citation.]" (*Stephens v. Superior Court, supra,* 96 Cal.App.4th 54, 61–62; *Truck Ins. Exchange v. Superior Court* (1998) 67 Cal.App.4th 142, 146–147 [78 Cal.Rptr.2d 721]; see also § 4: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application in this Code. The Code establishes the law of this State respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice.")

Whether or not the acceptance of the peremptory challenge was proper, it was effective to divest the trial court of jurisdiction: "Unlike the usual law and motion procedural rules, a peremptory challenge is not subject to a judicial hearing in order to be granted; rather, it takes effect instantaneously." (*Truck Ins. Exchange v. Superior Court, supra,* 67 Cal.App.4th 142, 147.) The dissent ignores this rule, and fails to mention *Louisiana-Pacific Corp. v. Philo Lumber Co., supra,* 163 Cal.App.3d 1212, the case relied on above. *Louisiana-Pacific* states: "We hold that because the challenge takes effect instantaneously and irrevocably, then later events (such as the dismissal of the party who asserted the challenge) do not cause a rescission of the challenge." (*Id.* at p. 1219.) Thus, rightly or wrongly, the trial judge accepted the challenge, thus depriving her of jurisdiction to act in the matter. Subsequent events, such as Judge Kaiser's refusal to hear the matter, cannot reinvest the trial judge with jurisdiction.[9]

We reiterate that the key point is that there was no tolling because there was no time between submittal of the peremptory challenge and its immediate acceptance by the trial judge. Defendants' tolling argument has no merit.

___

[9] The dissent states "Judge Trask had inherent authority to rescind her own erroneous order accepting plaintiff's peremptory challenge." It cites *Stephens v. Superior Court, supra,* 96 Cal.App.4th 54, 64. In *Stephens,* the court assumed that section 170.4, which deals with challenges for cause, applies to challenges under section 170.6. With this assumption, the court held that the court's inherent power to reconsider and correct erroneous rulings extends to orders granting peremptory challenges. We disagree with this conclusion because, as noted above, section 170.6, subdivision (3) expressly provides that a duly presented peremptory challenge is effective upon filing. *Stephens* fails to mention this subdivision and the cases which find that a peremptory challenge which is accepted by the trial judge takes effect instantaneously and irrevocably. (*Louisiana-Pacific Corp. v. Philo Lumber Co., supra,* 163 Cal.App.3d 1212, 1219.) The peremptory challenge procedure is fundamentally different than a challenge for cause, and we find the reasoning of *Louisiana-Pacific* to be more persuasive than the reasoning of *Stephens.*

This conclusion is not affected by our Supreme Court's recent decision in *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245 [135 Cal.Rptr.2d 639, 70 P.3d 1054], a criminal case. That case holds that a criminal resentencing is not a new trial within the meaning of section 170.6, and that a peremptory challenge cannot be lodged against the sentencing judge. The court cites and discusses several civil cases but does not decide whether they are correctly decided or not. For example, the court quotes our case of *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762 [97 Cal.Rptr.2d 121], but does not approve or disapprove it. In that case, we followed the earlier case of *Stegs Investments v. Superior Court* (1991) 233 Cal.App.3d 572 [284 Cal.Rptr. 495] and held that Stubblefield could file a peremptory challenge following reversal of a judgment, even though the judgment was a summary judgment, and not a judgment after trial. (*Stubblefield Construction Co. v. Superior Court, supra,* 81 Cal.App.4th at p. 765.) As noted above, the merits of the trial judge's decision are not before us: the issue is whether the statute of limitations was tolled even though the trial judge accepted the peremptory challenge. It was not.

The dissent also finds that plaintiffs should be estopped from denying that the trial judge's order denying defendants' motion for a new trial was untimely. The basis for the claimed estoppel is unclear. At one point, the dissent argues that plaintiffs should be estopped because the filing of the peremptory challenge had the effect of delaying the hearing on the new trial motion from February 27 to March 29, a date three days beyond the 60-day period. But the filing did not delay the hearing because Judge Trask promptly accepted the peremptory challenge. It was Judge Kaiser who delayed the decision by refusing to accept the peremptory challenge which had already been accepted by Judge Trask. Nor did plaintiffs control the court's calendar so that the delay in hearing the motions should be attributed to plaintiffs. In other words, the record does not show any evidence of unclean hands on the part of plaintiffs. Without such evidence, it is improper to apply estoppel to bar plaintiffs from asserting their statutory privilege under section 170.6.

In other words, the dissent relies on a maxim of jurisprudence which states that a person cannot take advantage of his or her own wrong (Civ. Code, § 3517) but the only "wrong" it names is that plaintiffs filed a peremptory challenge. According to the dissent, "its filing constituted erroneous affirmative conduct which caused the 60-day period to expire before defendant's motion could be heard." (Dis. opn., *post,* at p. 1373.) The filing of a peremptory challenge following a reversal on appeal is a statutory right under section 170.6. The mere filing of a peremptory challenge is not a wrong which justifies application of estoppel principles because the maxims of jurisprudence "are intended not to qualify any of the foregoing provisions of this code, but to aid in their just application." (Civ. Code, § 3509.) It cannot be seriously argued that plaintiffs

are estopped from relying on the trial judge's order accepting their peremptory challenge merely because they filed the peremptory challenge. The filing of the peremptory challenge was not equivalent to the inviting of error. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶¶ 8:244 to 8:248.15, pp. 8-118 to 8-121.) ▮ The doctrine of invited error is an application of estoppel principles, but our Supreme Court has made it clear that the invited error doctrine has no application when, as here, plaintiffs did not mislead the court in any way. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79].) There is simply no legal or evidentiary basis for a conclusion that the invited error doctrine, the unclean hands doctrine, or any other equitable principle is applicable to plaintiffs' assertion of a statutory right, i.e., the right to file a peremptory challenge under section 170.6 on remand.

## THE PROPER REMEDY

As noted above, the prior appeal also found a procedural defect in the trial court's granting of the judgment notwithstanding the verdict and new trial motions. We reversed the judgment and remanded with directions to enter a new judgment based on the jury's verdict. However, in a footnote, we stated that we did not express an opinion as to whether there were any procedural avenues available to attack the judgment on remand.

After remand, Davcon argued in the trial court that our ruling was a final ruling on the judgment notwithstanding the verdict issue and the footnote was not merely an admonition to again hear the motions in a procedurally correct manner. Thus, it contended that defendants had no further remedies available.

Davcon now argues that doctrines of waiver and estoppel precluded defendants from filing a second motion for judgment notwithstanding the verdict and new trial. Davcon thus raises the question which was not addressed in our prior opinion. Defendants of course argue that the doctrines of waiver, estoppel and invited error are inapplicable under the facts here.

These arguments require us to address the issue left open in our prior remand order: does the reversal of a judgment notwithstanding the verdict on procedural grounds allow a party, on remand, to file a new motion for judgment notwithstanding the verdict to again raise the same issues?

Normally, "[i]f the lower court gives a judgment or order, then vacates it, and an appeal is taken from the vacating order, reversal leaves the proceeding as if the order appealed from (the vacating order) had not been made; i.e., the original judgment comes back into full effect. [Citation.] The same is true of an order granting a new trial: Reversal leaves the judgment as if no such

order had been made, i.e., as if the motion had been denied; the original judgment is restored to full force. [Citations.]" (9 Witkin, Cal. Procedure, *supra,* Appeal, § 758, pp. 783–784.)

But here there is no prior judgment to be reinstated. As far as our record shows, judgment was never entered on the jury's verdict because of the granting of the first motion for judgment notwithstanding the verdict. Similarly, although we ordered the trial court to enter a new judgment on remand, a new judgment was not entered because of the granting of the second motion for judgment notwithstanding the verdict. We must therefore again order judgment to be entered on remand.

The question then becomes whether the judgment entered on remand can be repeatedly attacked by new motions for judgment notwithstanding the verdict and new trial until the procedural issues are eliminated. We think not. "If a motion for judgment notwithstanding the verdict was granted, and judgment was accordingly entered, reversal restores the proceeding to its condition before that erroneous judgment was rendered, i.e., there is a verdict without a judgment. The successful party does not have to go through another trial; he is entitled to have judgment entered in accordance with the verdict. [Citation.] The appellate court may make this clear by ordering a reversal with directions to enter judgment on the verdict. [Citations.]" (9 Witkin, Cal. Procedure, *supra*, Appeal, § 762, p. 790.) We think this rule applies even though no judgment was previously entered on the jury's verdict.

The case cited by Professor Witkin, *Ferran . v. Mulcrevy* (1935) 9 Cal.App.2d 129 [48 P.2d 984], was a mandamus action to compel the trial court to enter judgment after reversal of a judgment notwithstanding the verdict. The writ was granted. The court held that the general principle that an unqualified reversal sets the case at large so that a new trial is required before a judgment can be entered does not apply to reversals of judgments notwithstanding the verdict. "Consequently upon the reversal of the judgment in the present case the proceeding was restored to the state of the record in which it stood before the erroneous judgment was entered; that is, it was incomplete, with a recorded verdict in favor of plaintiff, but with no judgment entered thereon; and since the effect of the reversal also was to place both parties in the same positions they occupied up to the time the erroneous judgment was entered, and to reinvest them with the same rights they originally had, it follows that Ferran was entitled under the provisions of [former] section 664 of the Code of Civil Procedure to have judgment entered in his favor in conformity with said verdict, and thereupon defendants were given the right to assail the judgment and the verdict in the manner provided by statute. [Citation.]" (*Ferran,* at p. 131.) The provisions of former section 664 which allowed for a stay of the proceedings when a motion for judgment notwithstanding the verdict was pending were eliminated in 1961.

Section 664 now provides that judgment on the verdict shall be immediately entered even though a motion for judgment notwithstanding the verdict is pending. Accordingly, a judgment should have been entered in this case immediately following the jury's verdict. If it had, we would have ordered it reinstated upon reversal of the judgment notwithstanding the verdict. But since no such judgment was in our record, we ordered a new judgment to be entered.

Nevertheless, upon reversal of the judgment notwithstanding the verdict Davcon was entitled to have judgment entered on the jury's verdict without further proceedings. "Similarly, if the appellate court reverses a judgment NOV without directions, the prevailing party is entitled to entry of judgment in conformity with the verdict. [Citation.] Although not essential, appellate courts often give specific directions to the trial court to enter such judgment. [Citation.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 14:147, p. 14–44.) Accordingly, we will again order the trial court to enter judgment on the jury's verdict. This time, we specify that there are no further avenues of attack on the judgment in the trial court.

## DISPOSITION

The trial court's "Order for and Judgment Notwithstanding the Verdict or in the Alternative New Trial" filed April 25, 2001, is reversed and the trial court is ordered to enter judgment for Davcon in accordance with the jury verdict of August 5, 1998, without further proceedings. Plaintiff Davcon is to recover its costs on appeal.

Ramirez P. J., concurred.

**KING, J.,** Dissenting.—Under the present facts, the 60-day period for ruling on a motion for new trial (Code Civ. Proc., § 660)[1] should be suspended or tolled, and plaintiff Davcon, Inc. should be estopped from asserting that Judge Trask's March 29, 2001, order granting defendant Roberts & Morgan's motion for new trial was untimely.

Defendant contends the 60-day period was suspended or tolled after plaintiff filed its peremptory challenge to Judge Trask. (§ 170.6.) Plaintiff contends the peremptory challenge was effective immediately, and was not pending between the date of Judge Trask's order accepting the peremptory challenge (February 26) and the date Judge Trask rescinded her acceptance of the peremptory challenge (March 7). Therefore, plaintiff argues, its peremptory challenge did not suspend or toll the running of the 60-day period.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

First, plaintiff's peremptory challenge was untimely. A peremptory challenge is immediately effective only if it is in proper form and timely filed. (See, e.g., *Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 59 [116 Cal.Rptr.2d 616]; *Louisiana-Pacific Corp. v. Philo Lumber Co.* (1985) 163 Cal.App.3d 1212, 1219 [210 Cal.Rptr. 368].)

Section 170.6, subdivision (2) provides that "[I]n no event shall any judge ... entertain [a peremptory challenge] if it be made after ... trial of the cause has otherwise commenced." Based on this provision, the court in *Jacobs v. Superior Court* (1959) 53 Cal.2d 187 [1 Cal.Rptr. 9, 347 P.2d 9] articulated the "continuity of the proceedings" rule, "since the [peremptory challenge] must be made before the trial has commenced, it cannot be entertained as to subsequent hearings which are *a part or a continuation of the original proceedings*." (*Id.* at p. 190, italics added.)

In 1985, section 170.6, subdivision (2) was amended to further provide that "[a] motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."

No case has yet decided whether a hearing or ruling on a motion for new trial or judgment notwithstanding the verdict, following an appeal, is a "new trial" within the meaning of section 170.6, subdivision (2). In my view, it is not. It is, rather, a *continuation* of the immediately preceding trial.

In the prior appeal, this court reversed the "trial court's decision," that is, its order granting defendant's oral motion for judgment notwithstanding the verdict, and directed the entry of judgment in favor of plaintiff. This court did not order a "new trial," however, and expressed no opinion whether there were any procedural avenues available to attack the judgment in the trial court.

Cases applying the 1985 amendment to various postappeal proceedings are distinguishable. (See, e.g., *People v. Superior Court (Maloy)* (2001) 91 Cal.App.4th 391 [109 Cal.Rptr.2d 897]; *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762 [97 Cal.Rptr.2d 121]; *Hendershot v. Superior Court* (1993) 20 Cal.App.4th 860 [24 Cal.Rptr.2d 645]; *Stegs Investments v. Superior Court* (1991) 233 Cal.App.3d 572 [284 Cal.Rptr. 495].) In each of these cases, the original trial judge was assigned to conduct a "new trial," that is, reexamine an issue of fact. (§ 656.) None of these cases involved a postappeal hearing or ruling on a motion for new trial or judgment notwithstanding the verdict.

Notably, in each of these cases, the courts found that the 1985 amendment was intended to "reach cases 'in which the trial judge might be perceived as

holding a bias against the party that had successfully pressed the appeal ....' " (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245 [135 Cal.Rptr.2d 639, 70 P.3d 1054].) In all postappeal proceedings, there is a danger that the trial judge whose decision or order was reversed will be biased against one or more parties. But the 1985 amendment does not apply to *all* postappeal proceedings. (*Ibid.*) By its express terms, the 1985 amendment only applies if the trial judge whose decision or order was reversed on appeal is assigned to conduct a new trial, that is, reexamine an issue of fact. (§ 656.)

"The rationale for the [continuity of the proceedings] rule is that if a peremptory challenge is allowed in a proceeding that is a continuation of a prior proceeding *in which trial occurred, 'it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified* .... Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, *if confronted with an adverse judgment, allow them to disqualify him* ... in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues.' " (*Stephens v. Superior Court, supra,* 96 Cal.App.4th at p. 60, quoting *Jacobs v. Superior Court, supra,* 53 Cal.2d at p. 191.)

Before the 1985 amendment was enacted, our state Supreme Court warned against the potential for abuse of section 170.6. "We cannot permit a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration." (*McClenny v. Superior Court* (1964) 60 Cal.2d 677, 689 [36 Cal.Rptr. 459, 388 P.2d 691]; see also *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; *Peracchi v. Superior Court, supra,* 30 Cal.4th 1245.)

Accordingly, plaintiff's preemptory challenge to Judge Trask, one day before she was scheduled to rule on defendant's motion for a new trial, was untimely and improper. It was an abuse of section 170.6. It also had the practical, *if not intended, effect of delaying the hearing on defendant's motion* for new trial or judgment notwithstanding the verdict from February 27 to March 29, three days beyond the 60-day period.[2] For this reason, the 60-day period should be suspended or tolled, and plaintiff should be estopped from challenging Judge Trask's order granting a new trial as untimely.

It is well settled that "[t]he 60-day period under section 660 is mandatory and jurisdictional. [Citations.] The period may not be enlarged under the

---

[2] The 60-day period expired on March 26, 60 days after the date defendant filed its notice of intention to move for a new trial on January 24. (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 151 [242 Cal.Rptr. 649].)

rubric of mistake, inadvertence, surprise, excusable neglect under section 473 or by means of a nunc pro tunc order. [Citation.] '[A]n order made after the 60-day period purporting to rule on a motion for new trial is *in excess of the court's jurisdiction* and void.' [Citation.]" (*Dodge v. Superior Court* (2000) 77 Cal.App.4th 513, 517–518 [91 Cal.Rptr.2d 758], italics added.)

But it has also been held that an "[a]ction '*in excess of jurisdiction*' by a court that has jurisdiction in the 'fundamental sense' (i.e., jurisdiction over the subject matter and the parties) is not void, *but only voidable*. [Citations.] In contrast to cases involving other types of jurisdictional defects, a party may be precluded from challenging action in excess of a court's jurisdiction when the circumstances warrant applying principles of estoppel ...."[3] (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088 [56 Cal.Rptr.2d 386], first italics added.)

Thus, it has been held that the 60-day period must be suspended or tolled, where to do otherwise "would lead to absurdity." (*Collins v. Nelson* (1940) 41 Cal.App.2d 107, 112 [106 P.2d 39] (*Collins*).) More generally, a party may be estopped from challenging an act in excess of a court's jurisdiction where allowing the challenge would permit the party to "trifle with the courts." (*City of Los Angeles v. Cole* (1946) 28 Cal.2d 509, 515–516 [170 P.2d 928], overruled on other grounds in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 680 [312 P.2d 680].) Whether a party shall be estopped from challenging an act in excess of a court's jurisdiction "depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy." (*In re Griffin* (1967) 67 Cal.2d 343, 347–348, 62 Cal.Rptr. 1 [431 P.2d 625].)

In *Collins*, a defendant's motion for new trial was scheduled to be heard on January 13, 1937. On the date of the hearing, the plaintiff filed a motion to disqualify the trial judge for cause. (Former § 170, repealed by Stats. 1984, ch. 1555, § 1 p. 5479.) Earlier, the trial judge had entered judgment notwithstanding the verdict in favor of the defendants. The plaintiff appealed, and the *Collins* court reversed. (*Collins, supra,* 41 Cal.App.2d at p. 110.)

On January 13, 1937, the trial judge denied the plaintiff's disqualification motion, granted the defendant's motion for new trial, and the plaintiff again

---

[3] "The principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it. [Citation.] In contrast, a court acts in excess of jurisdiction ' "where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." ' [Citation.]" (*Conservatorship of O'Connor, supra,* 48 Cal.App.4th at pp. 1087–1088.)

appealed. The *Collins* court then held that the trial judge was without jurisdiction to rule on the section 170 motion, and that his rulings on that motion and on the motion for new trial were "void *ab initio.*" (*Collins, supra,* 41 Cal.App.2d at pp. 110–111.)

Upon remittitur, a second judge denied the plaintiff's section 170 motion, and referred the case back to the first trial judge. Then, on September 2, 1938, the first trial judge granted the defendant's motion for new trial. The plaintiff again appealed. This time, the plaintiff argued that the first trial judge was without authority or jurisdiction to rule on the motion for new trial, because the 60-day period had expired. Indeed, nearly 20 months passed between January 13, 1937, and September 2, 1938. (*Collins, supra,* 41 Cal.App.2d at pp. 111–112.)

The *Collins* court held that the 60-day period was suspended from January 13, 1937, to September 2, 1938. Thus, only 32 days had elapsed between the date the defendant filed its notice of intention (December 12, 1936) and the date the motion for new trial was granted (September 2, 1938). The *Collins* court reasoned that, "To hold otherwise would lead to absurdity, because a party resisting a motion for new trial could defeat it merely by [filing a section 170 motion], in the determination of which … more than 60 days might reasonably be expected to elapse …." (*Collins, supra,* 41 Cal.App.2d at p. 112–113.)

Here, as in *Collins*, the motion for new trial was originally scheduled well within the 60-day period. Here, as in *Collins*, plaintiff's peremptory challenge to Judge Trask delayed the hearing on defendant's motion for new trial beyond the 60-day period.[4] And here, as in *Collins*, plaintiff could have reasonably expected that its peremptory challenge, filed only one day before the February 27 hearing, would delay the hearing beyond the 60-day period.

Judge Trask accepted plaintiff's peremptory challenge on February 26, and notified the parties by telephone that the February 27 hearing was off calendar and that the matter would be reassigned. On March 7, Judge Kaiser declined to rule on defendant's motion for new trial, because he believed the peremptory challenge was improper, and sent the matter back to Judge Trask. On the same date, Judge Trask rescinded her earlier acceptance of the peremptory challenge.[5] Finally, on March 29, Judge Trask heard and granted defendant's motion.

---

[4] For purposes of delaying the proceedings, there is no difference between a disqualification motion under former section 170, which required a hearing, and a peremptory challenge under section 170.6, which does not.

[5] Judge Trask had inherent authority to rescind her erroneous order accepting plaintiff's peremptory challenge. (*Stephens v. Superior Court, supra, 96* Cal.App.4th at pp. 64–65.) " '[T]he court's inherent power to correct its own rulings is based on the California

Plaintiff waited over 30 days after defendant filed its notice of intention to file its peremptory challenge. By this time, both sides had fully briefed the substance of defendant's pending motion. When time is of the essence, as it invariably is when a hearing on a motion for new trial is pending, a party should not be allowed to thwart the proceedings by filing a facially invalid motion.

Regardless of whether plaintiff knew that its peremptory challenge was untimely and improper, its filing constituted erroneous, affirmative conduct which caused the 60-day period to expire before defendant's motion could be heard. Plaintiff should be estopped from benefiting from its own wrong. (Civ. Code, § 3517.)

This is not a case where the moving party failed to exercise diligence in presenting or prosecuting its motion for new trial. (*Dodge v. Superior Court, supra,* 77 Cal.App.4th at pp. 523–524 and fn. 12; *Estate of Shepard* (1963) 221 Cal.App.2d 70, 74 [34 Cal.Rptr. 212].) Nor is this a case where the litigants have attempted to "invest the court with jurisdiction to hear and determine the motion for a new trial by consent, waiver, agreement or acquiescence." (*City of Santa Barbara v. Superior Court* (1966) 240 Cal.App.2d 612, 614 [49 Cal.Rptr. 798].)

---

Constitution and cannot be impaired by statute.' [Citation.] '... Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is "constitutionally immaterial" to the limitation on the power of the Legislature to regulate the judiciary.' [Citation.] In either case, the ability of the trial court to correct what it perceives to be an incorrect interim ruling can only further the policy of conserving judicial resources." (*Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1042 [126 Cal.Rptr.2d 310].)

The oft-quoted rule that a peremptory challenge is "immediately effective," "irrevocable," and "cannot be rescinded" is based on section 170.6, subdivision (3). (See, e.g., *Louisiana-Pacific Corp. v. Philo Lumber Co., supra,* 163 Cal.App.3d at pp. 1219, 1221; *Truck Ins. Exchange v. Superior Court* (1998) 67 Cal.App.4th 142, 147 [78 Cal.Rptr.2d 721].) The statute provides that, upon the filing of a "duly presented" (i.e. timely) peremptory challenge, the challenged judge must reassign the case. The statute does not and cannot affect the challenged judge's inherent authority to rescind his or her erroneous acceptance of an untimely peremptory challenge.

Nor is the inherent constitutional authority of a challenged judge to rescind his or her erroneous acceptance of an untimely peremptory challenge affected by section 170.3, subdivision (d). This statute provides that "[t]he determination of the question of the disqualification of a judge is not an appealable order and *may be reviewed* only by a writ of mandate ...." (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 110 [61 Cal.Rptr.2d 134, 931 P.2d 312], italics added.) The mere availability of writ review has nothing to do with a judge's authority to correct an erroneous ruling.

Accordingly, I would find that the 60-day period was suspended or tolled, from February 26 to March 29, and that the March 29 order granting defendant's motion for new trial was therefore timely.